Filed 9/19/16  P. v. Jacobo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FREDERICK JACOBO,<br><br>    Defendant and Appellant. | D068308<br><br><br><br>(Super. Ct. No. SCD251966) |

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed.

Kurt David Hermansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

The fact that a person is being detained in a custodial facility by itself does not require that when, in the course of investigating a crime or violation of rules that occurred

in the facility, guards or correctional officers must provide the detainee with a *Miranda*[1] warning before speaking to the detainee about the crime or violation. A detainee must be given a *Miranda* warning only when, under all the circumstances, a reasonable person would not have felt at liberty to terminate questioning by investigators.

Here, the trial court found, and the record fully supports its finding, a deputy sheriff at a local jail was not required to admonish defendant and appellant Frederick Jacobo while questioning him about a razor blade found hidden in his possessions. Thus, the trial court did not err in denying defendant's motion to suppress statements he made to the deputy sheriff. Accordingly, we affirm defendant's conviction of possessing a sharp instrument in a penal institution, as well as a finding he was armed with a deadly weapon. (Pen. Code,[2] §§ 4502, subd. (a), 667, subd. (e)(2)(C)(iii) & 1170.12, subd. (c)(2)(C)(iii).)

## FACTUAL AND PROCEDURAL BACKGROUND

While being held in custody pending trial in an unrelated homicide,[3] defendant hid a razor blade, wrapped in paper, in the spine of a book he was reading. A deputy sheriff at the facility where defendant was being held discovered the razor blade during a routine "hygiene search" of defendant's bunk. Upon discovering the razor blade, the deputy separated defendant from other detainees and placed him in a holding cell used for interviews and for holding detainees while waiting for transportation to and from courts. Defendant was strip searched, and no additional contraband was discovered. After

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[2] All further statutory references are to the Penal Code.

[3] Defendant was eventually acquitted of all charges against him related to the homicide.

defendant dressed, the deputy interviewed defendant; however, before doing so, the deputy told defendant that he did not have to answer any of the deputy's questions and that defendant could stop the interview at any time. The holding cell where the interview took place was approximately 100 yards from defendant's cell and bunk. During the interview, the door to the holding cell was open, but the deputy stood in the doorway while interviewing defendant.

The deputy asked defendant if the book and razor blade belonged to him. Defendant admitted the book was his and stated: " 'Just charge me for it. If you found it in my stuff, just charge me for it.' " When the deputy asked defendant where he got the razor blade, defendant responded by asking the guard, " 'Who gives us razors every day?' " In response to a further question, defendant stated that he would not have had the razor blade " 'if the deputies were doing their jobs.' "

Although defendant was not given any *Miranda* warning prior to making those statements to the deputy, the trial court denied defendant's motion to suppress them. The trial court found that, in light of the entire circumstances in which the statements were made, defendant was not subject to a level of coercion which required that he be given an express *Miranda* warning.

As we indicated, the jury found defendant guilty of possessing a sharp instrument in a penal institution as well as being was armed with a deadly weapon. (§§ 4502, subd. (a), 667, subd. (e)(2)(C)(iii) & 1170.12, subd. (c)(2)(C)(iii).) Defendant admitted four prior prison terms and two "strike" convictions. The trial court sentenced defendant to an indeterminate term of 25 years to life.

Defendant filed a timely notice of appeal. On appeal, he argues the trial court

3

erred in denying his motion to suppress the statements he made to the deputy sheriff following discovery of the razor blade.

DISCUSSION

I

"[I]t has been repeatedly recognized it is difficult to apply basic *Miranda* principles in the context of questioning directed to a prisoner who is already under detention in a custodial facility. 'Courts have rightfully concluded that while the *Miranda* considerations are quite relevant within prison walls, the definition of custody must take into account the highly regulated life of inmates.' " (*People v. Macklem* (2007) 149 Cal.App.4th 674, 692.) Thus, it is now clear that "imprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*." (*Howes v. Fields* (2012) ___U.S.___ [132 S.Ct. 1181, 1190] (*Fields*).) There are three grounds for this conclusion. First, "questioning a person who is already serving a prison term does not generally involve the shock that very often accompanies arrest." (*Ibid*.) "Second, a prisoner, unlike a person who has not been sentenced to a term of incarceration, is unlikely to be lured into speaking by a longing for prompt release." (*Id*. at p. 1191.) "Third, a prisoner, unlike a person who has not been convicted and sentenced, knows that the law enforcement officers who question him probably lack the authority to affect the duration of his sentence." (*Ibid*.)

"In short, standard conditions of confinement and associated restrictions on freedom will not necessarily implicate the same interests that the Court sought to protect when it afforded special safeguards to persons subjected to custodial interrogation. Thus, service of a term of imprisonment, without more, is not enough to constitute *Miranda*

4

custody." (*Fields*, *supra*, 132 S.Ct. at p. 1191.)  Rather, "[w]hen a prisoner is questioned, the determination of custody should focus on all of the features of interrogation.  These include the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is conducted." (*Id*. at p. 1192.)

In *Fields*, the court expressly rejected a contention that separating an inmate from other inmates for questioning was coercive and sufficient to give rise to *Miranda* custody:  "Isolation from the general population is often in the best interest of the interviewee and, in any event, does not suggest on its own the atmosphere of coercion that concerned the Court in *Miranda*." (*Fields*, *supra*, 132 S.Ct. at p. 1192.)

In *Fields*, an inmate was serving a sentence when he was escorted to a conference room in a jail and subjected to what turned out to be a five- to seven-hour interrogation. The inmate was questioned about allegations he had engaged in sexual relations with a 12-year-old boy.  Eventually, he confessed to engaging in sex acts with the boy.  At the beginning of the interview, the inmate was told he was free to leave at any time and return to his cell; he was not handcuffed or subjected to any other physical restraints. However, both of the interrogators were armed.  The door to the conference room was sometimes open and sometimes shut.  At one point, when the inmate became upset, one of the deputies interrogating him used an expletive and told him he could return to his cell if he did not want to cooperate.  In finding that the inmate was not in custody for purposes of applying *Miranda*, the court relied "especially" on the "undisputed fact that [the inmate] was told that he was free to end the questioning and to return to his cell." (*Fields*, *supra*, 132 S.Ct. at p. 1194.)

5

II

In reviewing a trial court's determination that a defendant was not subjected to an interrogation which required a *Miranda* warning, we are bound by the trial court's factual determinations but independently determine whether, given those facts, a reasonable person would have felt free to end the interrogation. (*People v. Moore* (2011) 51 Cal.4th 386, 395.)

Here, we have no difficulty determining that defendant was in fact free to end his interrogation. Of critical importance, there is no dispute he was told at the outset that he could end the interview. (See *Fields*, *supra*, 132 S.Ct. at p. 1194.) By all accounts, the interview only lasted a few minutes, during which defendant's somewhat belligerent responses demonstrated he certainly did not believe he was being questioned about anything serious or substantial. Defendant was not handcuffed or shackled but, consistent with the reasoning in *Fields*, merely separated from other prisoners. Given the potential threat the razor blade would pose to other prisoners as well as jail personnel, the private interview served defendant's interests as well as the interests of the investigators.

Admittedly, the facts here are distinguishable from those considered in *Fields*, in that, prior to questioning defendant, the deputy subjected him to a strip search. Given that a lethal weapon had been found in defendant's bunk, a strip search was certainly justified on safety grounds. More importantly, however, given that the search was performed on a relatively long-term inmate, as opposed to an arrestee who had not yet spent a day in custody, the strip search was not something that would amount to a new, shocking, or intimidating event that would, or was calculated to, break down defendant's free will. Relatively long-term jail detainees, such as defendant, are subject to a

6

continuous and fairly substantial loss of privacy, including, as the record here shows, "hygiene searches" of their bunks and belongings. (See *Fields*, *supra*, 132 S.Ct. at pp. 1190-1191.)

In short, given the objective circumstances of the interrogation, defendant was not in *Miranda* custody and the trial court did not err in denying his motion to suppress his statements.

DISPOSITION

The judgment of conviction is affirmed.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

7